## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION

---

MARY STEWART as next of kin and
Administrator Ad Litem of the Estate of
DARRIUS STEWART, Deceased, and
HENRY WILLIAMS as next of kin and
Father of DARRIUS STEWART

       Plaintiffs,

vs.

CITY OF MEMPHIS, TONEY
ARMSTRONG, in his official capacity as
the former Police Director of the Memphis
Police Department, OFFICER CONNER SCHILLING
Individually and in his official capacity as a former Police
Officer of the Memphis Police
Department,

       Defendants.

Docket No. _____

JURY DEMANDED

---

## COMPLAINT

---

Plaintiffs Mary Stewart as next of kin and as Administrator Ad Litem of the Estate of

Darrius Stewart, deceased, and Henry Williams as next of kin and Father file this action pursuant

to 42 USC § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United

Sates of America arising out of the wrongful death of Darrius Stewart on July 17, 2015, and in

support, shows as follows:

## I. PARTIES

1.      Plaintiff Mary Stewart is bringing this action in her individual and representative

capacity as next of kin and as the Administrator Ad Litem of the Estate of Darrius Stewart,

deceased, who was an adult resident citizen of the State of Tennessee and was wrongfully and

unconstitutionally killed by Defendants as set forth in this Complaint during the evening of July

17, 2015.  Mary Stewart is a resident citizen of Shelby County, Tennessee. Plaintiff Mary Stewart,

as the Administrator Ad Litem of the Estate of Darrius Stewart, deceased, is a proper party to bring

this action for the wrongful death of Darrius Stewart pursuant to Tenn. Code Ann. §20-5-101 et

seq. including, but not limited to, Tenn. Code Ann. § 20-5-106.

2.      Plaintiff Henry Williams is bringing this action in his individual capacity as father

of Darrius Stewart and as next of kin of Darrius Stewart, deceased, who was an adult resident

citizen of the State of Tennessee and was wrongfully and unconstitutionally killed by Defendants

as set forth in this Complaint during the evening of July 17, 2015.  Henry Williams is a resident

citizen of Shelby County, Tennessee.

3.      Plaintiffs Mary Stewart and Henry Williams shall be referred to as "Plaintiffs"

throughout this action.

4.      Darrius Stewart shall be referred to as "Darrius" or "Darrius Stewart" or

"decedent" throughout this action.

5.      Defendant City of Memphis (the "City") is a municipality, duly incorporated under the laws of The State of Tennessee and as such is a political subdivision of the State of Tennessee and, among its other functions, operates and maintains a law enforcement agency known as the Memphis Police Department.  The City of Memphis is under a duty to operate its policing activities in a lawful manner so as to preserve the peace of the City of Memphis and the rights, privileges, and immunities guaranteed and secured to them by the constitutions and the laws of the United States and/or the State of Tennessee.  Such municipality is subject to suit pursuant to 42 U.S.C. Section 1983. The City of Memphis may be served with this Complaint by serving Bruce McMullen, City Attorney, 125 N. Main Street, Suite 336, Memphis TN 38103.

6.      Defendant Toney Armstrong ("Defendant Armstrong") is an adult resident citizen of Memphis, Tennessee.  At all times pertinent hereto, Defendant Toney Armstrong was the Police Director for the Memphis Police Department.  Defendant Armstrong was responsible for the day-to-day operation of the Memphis Police Department and was the final policymaker with respect to law enforcement operations for the City of Memphis at all times relevant to this action.  Defendant Armstrong was under a duty to operate the policing activities of the Memphis Police Department so as to preserve not only the peace of the City of Memphis but also to protect its citizens, and to preserve their rights, privileges, and immunities guaranteed and secured to them by the constitutions and the laws of the United States and/or the State of Tennessee.  Plaintiffs are bringing this action against Defendant Armstrong in his official capacity as Police Director of the

Memphis Police Department. He may be served with process at 201 Poplar Avenue, Memphis, Tennessee, 38103 or alternatively at his residence or current place of work at St. Jude Children's hospital.

7.      Defendant Conner Schilling ("Officer Schilling" or "Defendant Schilling") is upon information and belief, an adult resident citizen of Memphis, Tennessee. At all times pertinent hereto, Defendant Shilling was an employee and officer with the Memphis Police Department, acting under the color of state law and within the course and scope of his employment with the Memphis Police Department. Plaintiffs are bringing this action against Defendant Schilling in both individual capacity and in his official capacity as an officer for the Memphis Police department.

## II.   JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action based on the important questions of federal law presented by this case. Plaintiff brings this action pursuant to all applicable federal statutes including, but not limited to, 42 U.S.C. §§1983 and 1988.

8.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to the causes of action alleged in this Complaint occurred within the Western District of Tennessee and specifically Shelby County, Tennessee.

## III.   FACTS

9.      On July 17, 2015, Darrius Stewart, a black male, was a passenger in a vehicle stopped by Officer Schilling, a white male.

10.     The alleged basis for the stop was a faulty headlight.

11.     Each of the occupants of the vehicle were complicit with the officer's instructions and answered his questions truthfully.

12.     None of the occupants of the vehicle had used alcohol or drugs on July 17, 2015.

13.     For reasons unknown to the Plaintiffs, and despite the lack of any indication that any of the occupants of the vehicle were known criminals or were engaged in criminal activity, Office Schilling indicated he was going to run a computer query regarding whether or not any of the occupants had outstanding warrants.

14.     Upon information and belief, this practice occurs more regularly by the Memphis Police Department checking on young black males for warrants than it does established older white males.

15.     Officer Schilling claims he received information that indicated Darrius may have outstanding warrants.

16.     The Plaintiffs dispute the validity of the warrants.

17.     That Darrius Stewart is and was at all times, as a matter of fact and a matter of law, innocent of any and all charges purportedly made against him while he was a minor.

18.     According to eye witnesses, Conner Schilling began being "rough" with Darrius Stewart before he knew of warrants or asked him to exit the vehicle.

19.     Upon information and belief, Darrius Stewart had provided the exact same information to members of the Memphis Police Department twice in the previous year, once for

an automobile accident he was involved in and another when he was a passenger in a different vehicle. Neither of those times was he advised that a warrant was outstanding, nor was he advised that any state wanted him held for extradition.

20.    After allegedly obtaining the information regarding potential warrants by the decedent, Office Schilling returned to the stopped vehicle and directed Darrius to exit the vehicle.

21.    Darrius Stewart fully complied with the directions of Officer Stewart and exited the vehicle and allowed himself to be "patted down" to satisfy Officer Schilling that he was not armed and did not pose a threat.

22.    Officer Schilling then placed Darrius Stewart in the caged backseat of the police car, without being handcuffed and without being placed under arrest.

23.    That it is well-documented common custom and practice that Memphis Police officers place un-arrested citizens in the back of police cars without being handcuffed.

24.    That on a daily basis, officers from the Memphis Police Department place un-arrested individuals in the back of police cars without being handcuffed.

25.    That it is such a common occurrence that Officer Schilling believed he was acting in accordance with the standards, custom and practice of the Memphis Police Department.

26.    Officer Schilling then issued a citation to the driver of the vehicle and allowed that vehicle to leave the scene.

27.   Upon information and belief, Officer Schilling did not receive any radio transmissions regarding any law enforcement entity's intent to transport or detain Darrius Stewart before allowing the stopped vehicle to leave.

28.   The City has yet to explain how Schilling instructed the vehicle to exit the scene without knowing whether or not he was going to arrest Darrius Stewart.

29.   According the Memphis Police Department, Officer Schilling then left his radio on after receiving a "coded" transmission which is intended to alert the officer to receive radio transmission information outside the presence of the "suspect."

30.   According the Memphis Police Department, Conner Schilling allowed Darrius Stewart to overhear radio transmissions that stated he was to be held on outstanding warrants.

31.   It is common custom and practice for offices of the Memphis Police department to receive coded radio transmissions in the presence of un-arrested individuals place in their squad cars.

32.   According to the Memphis Police Department, Conner Schilling did not call for back-up support after allegedly learning that he needed to detain and transport Darrius Stewart.

33.   It is common custom and practice for officers of the Memphis Police Department to fail to call for back-up when placing subjects under arrest.

34.   This practice is even more common place when the office is physically advantaged over smaller individuals, including youth and women.

35.   Conner Schilling was physically larger and stronger than Darrius Stewart.

36.     Conner Schilling had been trained in use of force, hand-to-hand combat and in physical submission tactics.

37.     Darrius Stewart had not been trained in use of force, hand-to-hand combat or physical submission tactics.

38.     These factors all played in Conner Schilling's belief that he did not need back-up.

39.     These factors are commonly applied by Memphis police officers in determine whether back-up is needed when arresting citizens.

40.     According to Conner Schilling, he then intended to arrest the uncuffed Darrius Stewart and place him in handcuffs.

41.     After Officer Schilling opened the door to the back of the police car, Darrius Stewart tried to flee.

42.     Conner Schilling elected to use force to detain Darrius Stewart and as Darrius attempted to flee, Schilling began assaulting Stewart.

43.     While Conner Schilling was on top of Darrius Stewart on the ground, Witnesses heard Darrius loudly cry "I can't breath" or "I can't fucking breath."

44.     During the struggle, despite having previously patted down Darrius, and despite knowing Stewart was attempting to flee, Conner Schilling shot Darrius once in the upper right chest.

45.     That first gunshot was not a fatal shot and was not the cause of the death of Darrius Stewart.

46.     Some period of time passed and Conner Schilling again shot Darrius Stewart as Darrius Stewart had stood up and was in the process of turning and fleeing away from the scene.

47.     The second shot was fatal to Darrius Stewart.

48.     Darrius Stewart was an unarmed young black man attempting to flee when he was killed by an enraged and impassioned Conner Schilling.

49.     The City of Memphis has a long and storied history of its police officers shooting unarmed black men who are attempting to flee its Police Officers.

50.     The Supreme Court of the United States has previously addressed the City of Memphis and the shooting of unarmed black men fleeing from police.

51.     As a direct and proximate result of the actions or omissions of Defendants, Darrius Stewart was killed, and his constitutional rights under the United States Constitution and the Tennessee Constitution were violated.

52.     It was foreseeable that decedent and his family would sustain the significant damages and devastating loss as a result of the actions and omissions of Defendants.

53.     At all times relevant hereto, Defendant Schilling was acting in his official capacity as law enforcement officers for the Memphis Police Department and acting under color of state law.

54.     The policies, customs, and training of the City of Memphis were the driving force behind the deprivation of constitutional rights sustained by decedent.

55.     Alternatively, at all times relevant to the complaint herein, Defendant Schilling

was acting in his individual capacities.

## IV.  CIVIL RIGHTS VIOLATIONS BY DEFENDANTS

56.     The allegations set forth in the previous paragraphs are adopted and incorporated herein by reference.  Further, the below allegations are to read as applicable to every cause of action against the Defendants.

57.     Defendants City of Memphis, Director Armstrong, Officer Schilling and officers, agents and employees of the City of Memphis committed the above described actions and omissions under color of law and under color of their authority as law enforcement officers, substantially depriving Darrius Stewart of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 § 1983 and deprived him of rights guaranteed to him by the Constitution of the United States of America including, but not limited to, the Fourth and Fourteenth Amendments.  Specifically he was deprived of rights including, but not limited to (a) freedom from unlawful seizure of his person; (b) freedom from the use of unjustified and excessive force; and (c) freedom from deprivation of liberty without due process.

58.     Prior to July 17, 2015, Defendant City of Memphis permitted, encouraged, tolerated, and ratified an official pattern, custom, and practice by its officers of shooting first and using excessive and unjustified force, knowing that said practice violated decedent's and others' free exercise and enjoyment of rights and privileges secured to them by the Constitution of the United States of America and the Constitution of the State of Tennessee.

59.     At the time of the incident on July 17, 2015, the City of Memphis had no policy or custom regarding the handling of individuals such as Darrius Stewart and how to not escalate a situation and did not provide adequate training in the appropriate manner and means to deal with such situations as the one encountered at the time of this incident.  Even if the City of Memphis had a policy or custom regarding such situations, the City of Memphis improperly trained and/or supervised its police officers, thereby allowing such police misconduct to occur.

60.     Defendants directly or with deliberate indifference, under color of law, approved and/or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of officers.  By failing to enact proper procedures and policies for disciplining officers that violate the civil rights of citizens, such as decedent, or by failing to enforce any such policy or procedure by punishing or censuring officers, Defendants have approved, condoned, and ratified the unlawful conduct of officers.  Specifically, the City of Memphis law enforcement officers utilized excessive force in with respect to Darrius Stewart and acted in deliberate indifference to his health and welfare by escalating the situation in an unnecessary fashion. The direct and proximate result of Defendants' actions and inactions was that decedent suffered severe physical and emotional injuries, including death.

61.     Defendants City of Memphis and Toney Armstrong have allowed police officers to engage in a pattern of conduct that violates the civil rights of its citizens for years leading up to the death of Darrius Stewart by failing to enforce policies and procedures and by ratifying the unconstitutional conduct of officers by not punishing them and by allowing them to continue

serving as law enforcement officers.  Defendants City of Memphis and Toney Armstrong have altogether failed to cultivate a culture of excellence in the police force by sending the clear message to police officers that it is okay to shoot first and ask questions second if the officer thinks that there is any chance that a potential suspect or future victim may have a weapon or may pose a threat to the officer. This pattern of conduct has existed for an extended period of time, but has intensified since the death of Memphis police officer Martoiya Lang in December 2012. Since Officer Lang's death, there has been a significant increase in police shootings and the city has done nothing to address this problem but has instead chosen to allow its officers to shoot innocent victims under the guise of the officers sensing a potential threat and then failing to properly investigate the shootings and simply accepting the officer's excuse that they felt threatened. The death of Darius Stewart would be tragic if it were the only police shooting of the year, but it becomes even more tragic when the overall conduct of the Defendant City of Memphis is considered and the overall picture is seen of a department that has tolerated, ratified and almost encouraged the shootings that this city has seen over the past year. It is not enough to have policies that prohibit constitutional violations; Defendants City of Memphis and Toney Armstrong must also enforce those policies and must send a clear message to officers that they will not tolerate violations of those policies by officers. Instead of trying to send that message, Defendant City of Memphis has chosen to turn a blind eye to the recent increase in police shootings and killings.

62.     Plaintiff avers that firing gunshots toward an individual who is unarmed and fleeing excessive and/or unreasonable deadly force against the decedent in violation of the

Fourth and Fourteenth Amendments of the United States Constitution. Defendant Schilling committed the actions described herein and/or omissions under the color of state law and by virtue of their authority as law enforcement officers for the Memphis Police Department and substantially deprived Darrius Stewart of his clearly established rights, privileges, and immunities guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983 and 1988.

63.    Defendants deprived Darrius Stewart of fundamental rights guaranteed under the Constitution including, but not limited to, the right to be free from unlawful seizure of his person; free from the use of unjustified, unnecessary and excessive force; and free from the deprivation of life and liberty without due process of law.

64.    The unreasonable and excessive use of force against Darrius Stewart deprived him of his right to be free from unreasonable, excessive and deadly force and unreasonable seizure through means intentionally applied under the Fourth Amendment to the U.S. Constitution. The Plaintiff avers that the Defendant Officer Schilling knew to a moral certainty that the shots fired at Darrius Stewart as means intentionally applied to seize him were likely to cause severe injury or death.

65.    Defendant Officer was not justified in their use of deadly force and further could not reasonably have believed in good faith that deadly force was warranted. In support of the Plaintiffs' claim that the conduct of the Defendant Officer Schilling violated the Fourth Amendment rights of Darrius Stewart, the Plaintiff relies upon the factual allegations set forth in

this Complaint and the custom and pattern of the Memphis Police Department's officers shooting first and asking questions second and further custom and pattern of its failing to enforce its own policies with regard to the use of deadly force. Plaintiff would assert that Defendant Armstrong and the Defendant City have altogether failed to cultivate a culture of excellence within the Memphis Police Department and have tolerated and ratified the actions of its officers for way too long and unlawful through its intentional action at worst or apathy at best. These Defendants have created the unconstitutional expectations of their officers that it is acceptable to violate the constitutional rights of the citizens of this city.

66.    Defendant City of Memphis does not properly investigate police seizures and use of excessive force on citizens or properly discipline officers for those acts.  Defendant City of Memphis and its relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby tacitly approving and ratifying the type of misconduct alleged here.

67.    Municipal policymakers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Memphis Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct in this case.

68.    The policy, practice and custom of the police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation under police department regulations to do so.  This conduct includes police officers who remain silent or give false or misleading information during official investigations in order to

protect themselves or fellow officers from internal discipline or retaliation, civil liability, or criminal prosecution.

69.     The injuries and death of Darrius Stewart could have been avoided had Defendant City of Memphis provided better or more training as to the proper use of excessive force. This lack of adequate training amounts to an unconstitutional policy.

70.     Defendant City of Memphis was on notice of each and every constitutional violation alleged herein taking place by Memphis Police Department officers.

71.     As a direct and proximate result of the actions and omissions of the Defendants, Darrius Stewart was killed and his rights under the Fourth Amendment of the U.S. Constitution were violated.

72.     Plaintiff avers that Defendant City of Memphis and Defendant Toney Armstrong are liable for the actions of the Defendant Officer Schilling as set forth above because Defendants City of Memphis and Toney Armstrong permitted, encouraged, tolerated, and ratified an official pattern, custom, and practice by its law enforcement officers violating the federal constitutional rights of the public at large during the course of their law enforcement applications.  The actions of Defendant Schilling as alleged above were done pursuant to one or more policies, practices and/or customs of Defendant City of Memphis, including but not limited to the the customs regarding failing to call for back-up and the customs regarding receiving coded radio transmissions in the presence of citizens not yet under arrest.

73.     After the incident, Defendants City of Memphis and Toney Armstrong determined that the Defendant Schilling had acted appropriately and in compliance with the policies, practices and customs of the Memphis Police Department with respect to the use of force against Darrius Stewart.

74.     However, the actions of Schilling during this incident were in direct violations of the policies, practices and customs of Defendant City of Memphis and the laws of the United States and the State of Tennessee regarding the use of deadly and/or excessive force.

75.     The State of Tennessee found that the death of Darrius Stewart was illegal and in direct conflict with the laws of the State of Tennessee, and indeed, presented its belief to a grand jury.

76.     Despite violating the policies, practices and customs of the City of Memphis and state law, Officer Schilling wasn't disciplined or notified that his use of force was not reprimanded or terminated. Accordingly, the Defendants City of Memphis and Toney Armstrong ratified, condoned, acquiesced in or approved of the Defendant Officer's conduct regarding excessive force in this action in all respects. As the Defendants City of Memphis and Toney Armstrong determined that the Defendant Schillings conduct as set forth herein was in compliance with the policies, practices and customs of the City of Memphis and the Memphis Police Department, the Defendants City of Memphis and Toney Armstrong are directly liable for the actions and constitutional violations of the Defendant Officer.

77.     Moreover, Defendant Officer Schilling has a history of aggression.  Defendant City of Memphis, violated the civil rights of decedent through its policies, lack of policies, and/or customs of hiring, firing, and supervision.  Such policies and customs were the moving force behind the damages sustained by decedent and Plaintiff in this case.

78.     Officer Schilling was awarded a full pension from the City of Memphis based upon his "PTSD" from the killing of Darrius Stewart.

79.     According to the City of Memphis "This retirement was granted by the pension board, because it is required under the city's pension laws based on the recommendation of two doctors."

80.     The Pension Board of the City of Memphis applied Memphis Code 25-1 (27) to award Conner Schilling full pension.

81.     The City of Memphis condoned and ratified the actions of its own Pension Board.

82.     The City of Memphis could have appealed the decision of the Pension Board by way of Petition for Review to the Chancery Court of Shelby County.

83.     The City of Memphis declined to appeal to Chancery Court.

84.     The City did not dispute in any legal forum the Board's finding that Conner Schilling suffered PTSD arising as a direct and proximate result of an "accident" sustained by a participant after he became a participant and while in the actual performance of duties for the city without willful negligence on the part of Schilling.

85.    The City agrees that Schillings claimed "PTSD" was inflicted while Schilling was performing duties for the city in the killing of Darrius Stewart.

86.    The City agrees that Conner Schilling was not willfully negligent in the performance of his duties while killing Darrius Stewart.

87.    The City of Memphis, as evidenced by filings of its City Attorney's office understands that the ordinance requires the injury be a result of the performance of city duties and has argued this same issue before the Tennessee Court of Appeals on at least one occasion.

88.    The City of Memphis defends the decisions of the Pension board thru its City Attorney's department.

89.    The City of Memphis believes that the second shot of Officer Conner Schilling was done so without willfulness or negligence by Conner Schilling.

90.    The City of Memphis ratifies the killing of Darrius Stewart by failing to even investigate whether or not excessive force was used upon Darrius Schilling.

91.    The City of Memphis believes Conner Schilling acted in accordance with its policies and procedures when he took the second shot that killed Darrius Stewart.

92.    Defendant City of Memphis and its Police department either intentionally or willfully maintain an inadequate complaint system for citizens attempting to put the City on notice of the bad actions of its officers.

93.    Defendant City of Memphis either intentionally or willfully fail to adequately investigate complaints against its officers.

94.     Defendant City of Memphis, thru the Memphis Police department fails to document complaints by citizens against officers, so there is no way to determine the amount of complaints against certain officers.

95.     Defendant City of Memphis fails to maintain a system with flags officers with multiple complaints against them, whether such complaints are sustained or "unsustained."

96.     Defendant City of Memphis has a "non-complaint" policy wherein complaints to Internal Affairs by citizens are often not even recorded as complaints and as such, aren't even investigated

97.     Defendant City of Memphis fails to support or maintain an adequate early warning or early intervention system to monitor the behaviors of its officers.

98.     Defendant City of Memphis has a grossly disproportionate amount of its police officers being arrested for committing crimes when compared to cities of similar size and racial make-up.

99.     Defendant City of Memphis' systemic and predictable rate of officers committing crimes results in approximately 29.7 arrests of officers per every 1,000 officers.

100.    Defendant City of Memphis denies such a widespread problem exists within its own force.

101.    Such a denial, rather than admission or recognition of an incredibly well-documented history of illegal and/or corrupt police officers creates a culture within the department

wherein Memphis Police Officers believe they can act in violation of citizens constitutional rights without consequence.

102.    That denial and culture directly contributed and/or caused the actions of Conner Schilling the night he killed Darrius Stewart.

103.    Defendants Toney Armstrong and the City of Memphis violated the civil rights of decedent in that they were deliberately indifferent to the rights of decedent in others through their hiring, firing and retention of officers.

104.    As a matter of both policy and practice, the Memphis Police Department and Toney Armstrong directly encourage, and are thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train and/or re-train, supervise and control officers, such that their failure to do so manifests deliberate indifference.

105.    As a matter of both policy and procedure, the Memphis Police Department facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct and by failing to train or enforce policies and procedures on the books, if such policies and procedures exist, thereby leading Memphis Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff.

106.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Memphis Police Department conduct unlawful seizures and use excessive

force on citizens, yet the Memphis Police Department makes findings of wrongdoing in a disproportionately small number of cases.

107.    Defendant City of Memphis does not properly investigate police seizures of civilians and uses of excessive force or properly discipline officers for those acts.

108.    The aforementioned actions and omissions of the Defendants were proximately caused by the policies, practices and customs of Defendants City of Memphis and Toney Armstrong, which were also the underlying cause of the death of Darrius Stewart.

109.    In particular, Plaintiffs aver that they had a constitutional right of familial association with their son. Further, Plaintiffs aver that they had a constitutional right to the society and companionship of their son. As a direct result of Defendants' acts and omissions, Plaintiffs lost their son and suffered great losses of a personal and pecuniary nature, including but not limited to the loss of companionship, society and support of the Decedent as well as grief, sorrow and mental suffering. Plaintiffs had close emotional ties to their son Darrius Stewart. Plaintiff avers that the Defendants violated these rights and that their actions constituted an unconstitutional termination of their familial association and society and companionship of their son under the Fourteenth Amendment to the United States Constitution.

110.    Defendants committed the above described actions and/or omissions under the color of state law and by virtue of their authority as a police officers of the Memphis Police Department and substantially deprived Darrius Stewart of his clearly established rights, privileges

and immunities guaranteed to him as citizens of the United States by the Fourth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. §1983 and 1988.

## V.    COMMON LAW CLAIMS

Plaintiffs hereby incorporates all previous allegations and paragraphs within this complaint and further refers the below paragraph to the above claims to the extent they are applicable.

111.    Plaintiffs hereby assert the death of Darrius Stewart was a "wrongful death" as contemplated by Tennessee statutory and case law, and the facts as alleged above demonstrate that each defendant is liable for the wrongful death of Darrius Stewart by their intentional acts, their acts of negligence, and their willful and wonton conduct.  The defendants each breached their duties owed to Plaintiff under the law of the state of Tennessee, which lead to a foreseeable and predictable result.

112.    Plaintiffs further assert that the City of Memphis is liable for the death of Darius Stewart and all attending damages by the wrongful and/or negligent hiring, supervision and retention of not only Conner Schilling, but of a multitude of officers which contributed to the policies and customs and permissive culture of silence and protection for the acts of one another.

113.    Plaintiffs further allege that the Defendants are liable to the Plaintiffs for the negligent and/or intentional infliction of emotional distress as clearly outlined by Tennessee statutory and case-law.

114.     Plaintiffs hereby assert and preserve their right to amend this complaint as further facts are discovered.

## DAMAGES

115.  As a direct and proximate result of the acts and/or omissions of Defendants, Darrius Stewart was killed on July 17, 2015, and Plaintiffs, as his parents, were injured. The injuries for which Plaintiffs seeks compensation, include, but are not limited to:

a.       Physical injuries, including the death of their son, Darrius Stewart, and his resulting loss of familial association with him;

b.       Conscious physical and emotional pain and suffering of their son, Darrius Stewart, from the time of injury until his death, and his loss of the pleasures of life;

c.       Medical expenses incurred for their son, Darrius Stewart;

d.       Funeral expenses incurred for their son, Darrius Stewart;

e.       The pecuniary value of the life of their son, Darrius Stewart, including but not limited to the loss of his companionship and;

f.       Infliction of emotional distress, *negligent*, and/or reckless and/or intentional, upon Plaintiffs;

g.       Prejudgment interest and/or postjudgment interest and statutory and discretionary costs to the extent permitted by law;

h.       Attorney fees pursuant to applicable law, including but not limited to 42 U.S.C.

§ 1988;

I. Injunctive and/or declaratory relief that the acts and conduct set forth above were unconstitutional, and precluding them from engaging in such activities in the future; and

j.       All such further relief, both general and specific, to which they may be entitled under the premises.

k.       It was foreseeable that the above damages would be sustained as a result of the policies, customs, lack of training, actions, and omissions of Defendants.

## PUNITIVE DAMAGES

116. The allegations set forth in the previous paragraphs are adopted and incorporated herein by reference.

117. The actions of Defendants were performed intentionally, recklessly, fraudulently and/or maliciously, thus entitling Plaintiff to a substantial award of punitive damages under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that summons issue and that Defendants be served and made to answer herein; that a jury trial be held wherein Plaintiffs are awarded compensatory damages in the amount of $7,170,000.00 and punitive damages in the amount of $10,000,000.00 for the wrongful death of Darrius Stewart on behalf of the Estate of Darrius Stewart and his family, and that Plaintiff be awarded such other and further relief, both general and specific, to which he may be entitled under the premises.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL CLAIMS ALLOWABLE**

**BY LAW WHEN THE ISSUES ARE JOINED HEREIN.**

Respectfully submitted,

On behalf of Henry Williams:

Murray B. Wells, TN #21749
*wells@hornewells.com*
Arthur E. Horne, III TN #20475
*horne@hornewells.com*
Horne & Wells, PLLC
81 Monroe Ave, Suite 400
Memphis, TN 38103
(901) 507-2521

Carlos E. Moore, TN#28649
*carlos@carlosmoorelaw.com*
Moore Law Group, P.C.
P.O. Box 1487
Grenada, MS 38902
662-227-9940

On Behalf of Mary Stewart:

Malik Z. Shabazz DC# 458434
*attorney.shabazz@yahoo.com*

6411 Ivy Lane #402
Greenbelt, MD 20770
(301)513-5445
(Pro Hac Vice Motion Pending)