**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

MARY STEWART as next of kin and
Administrator Ad Litem of the Estate of DARRIUS
STEWART, Deceased, and HENRY WILLIAMS
as next of kin and Father of DARRIUS STEWART,

       Plaintiffs,

v.                                       No.: 2:16-cv-02574-STA-dkv

CITY OF MEMPHIS, TONEY ARMSTRONG, in
his official capacity as the former Police Director of
the Memphis Police Department, OFFICER
CONNER SCHILLING, individually and in his
official capacity as a former Police Officer of the
Memphis Police Department,

       Defendants.

---

**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING
MOTION TO DISMISS AND/OR MOTION TO STRIKE
OF DEFENDANT CITY OF MEMPHIS**

---

Plaintiffs Mary Stewart as next of kin and as Administrator Ad Litem of the Estate of

Darrius Stewart, deceased, and Henry Williams as next of kin and father of Darrius Stewart filed

this action pursuant to 42 U.S.C. § 1983 against the City of Memphis, Toney Armstrong in his

official capacity as the former director of the Memphis Police Department, and Conner Schilling

individually and in his official capacity as a former officer with the Memphis Police Department.

Plaintiffs also allege various state law claims.

Defendant City of Memphis has filed a motion to dismiss all claims against it and the

official capacity claims against Defendants Armstrong and Schilling. (ECF No. 12.) In the

alternative, Defendant has moved to strike certain portions of the complaint. Plaintiffs have filed

a response to the motion (ECF No. 19), and Defendant has filed a reply to the response. (ECF No. 20.) For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

Allegations of the Complaint

The complaint (ECF No. 1) alleges as follows. On July 17, 2015, Darrius Stewart, a black male, was a passenger in a vehicle stopped by Officer Schilling, a white male. (*Id.* at ¶ 9.) The alleged basis for the stop was a faulty headlight. (*Id.* at ¶ 10.) Each of the occupants of the vehicle complied with Officer Schilling's instructions and answered his questions truthfully. (*Id.* at ¶ 11.) None of the occupants of the vehicle had used alcohol or drugs on that date. (*Id.* at ¶ 12.)

For unknown reasons, Officer Schilling indicated that he was going to run a computer query regarding whether or not any of the occupants had outstanding warrants. (*Id.* at ¶ 13.) The Memphis Police Department has a practice of checking on young black males more often for warrants than it does for older white males. (*Id.* at ¶ 14.)

Officer Schilling allegedly received information that indicated that Stewart might have outstanding warrants, although Plaintiffs dispute the validity of the warrants and allege that he was innocent of any charges purportedly made against him while he was a minor. (*Id.* at ¶¶ 15-17.) Stewart had been stopped previously by the Memphis Police Department but had never been advised of outstanding warrants. (*Id.* at ¶ 19.)

Officer Schilling began being "rough" with Stewart before Officer Schilling knew of the warrants, and he asked Stewart to exit the vehicle. Stewart fully complied with the directions of Officer Schilling and exited the vehicle and allowed himself to be "patted down" to satisfy Officer Schilling that he was not armed and did not pose a threat. (*Id.* at ¶ 21.)

Officer Schilling then placed Stewart in the caged backseat of the police car, without being handcuffed and without being placed under arrest. It is a common custom and practice that Memphis Police officers place un-arrested citizens in the back of police cars without being handcuffed. This occurs on a daily basis and is such a common occurrence that Officer Schilling believed that he was acting in accordance with the standards and practice of the Memphis Police Department. (*Id.* at ¶¶ 22-24.)

Officer Schilling issued a citation to the driver of the vehicle and allowed that vehicle to leave the scene. (*Id.* at ¶ 26.) Before allowing the vehicle to leave, Officer Schilling had not received any radio transmissions regarding any law enforcement entity's intent to transport or detain Stewart. (*Id.* at ¶ 27.)

Officer Shilling left his radio on after receiving a coded transmission that alerted him that he needed to receive radio transmission information outside the presence of Stewart. (*Id.* at ¶ 29.) Stewart overheard the radio transmission that he was to be held on outstanding warrants. (*Id.* at ¶ 30.) The Memphis Police Department has a custom and practice of allowing un-arrested individuals who are in the back of a squad car to hear this type of coded radio transmission. (*Id.* at ¶ 31.)

Officer Schilling did not call for back-up support after learning that he needed to detain and transport Stewart. (*Id.* at ¶ 32.) It is a common custom and practice for officers of the Memphis Police Department to fail to call for back-up when placing subjects under arrest, especially when the officer is physically advantaged over smaller individuals, including youth and women. (*Id.* at ¶¶ 33-34.)

Officer Schilling was physically larger and stronger than Stewart and had been trained in the use of force, hand-to-hand combat, and in physical submission tactics. (*Id.* at ¶¶ 35-36.)

Stewart had not been trained in the use of force, hand-to-hand combat, or physical submission tactics. (*Id.* at ¶ 37.)  These factors all played into Officer Schilling's belief that he did not need back-up, and these factors are commonly applied by Memphis police officers to determine whether back-up is needed when arresting citizens.  (*Id.* at ¶¶ 38-39.)

Officer Schilling then decided to arrest Stewart and place him in handcuffs. (*Id.* at ¶ 40.) After Officer Schilling opened the door to the back of the police car, Stewart tried to flee, and Officer Schilling began assaulting him. (*Id.* at ¶¶ 41-42.)  While Officer Schilling was on top of Stewart on the ground, Stewart loudly cried "I can't breath" or "I can't f**king breath."  (*Id.* at ¶ 43.)

During the struggle, Officer Schilling shot Stewart once in the upper right chest; the first gunshot was not a fatal shot and was not the cause of the death of Stewart.  (*Id.* at ¶¶ 44-45.) Some period of time passed, and Officer Schilling shot Stewart again as Stewart stood up and was in the process of turning and fleeing away from the scene. (*Id.* at ¶ 46.)  The second shot was fatal.  (*Id.* at ¶ 47.)  Stewart was unarmed when he attempted to flee and was killed by Officer Schilling. (*Id.* at ¶ 48.)  Stewart was killed as a direct and proximate result of the actions or omissions of Defendants. (*Id.* at ¶ 51.)

The City of Memphis has a history of its police officers shooting unarmed black men who are attempting to flee.  (*Id.* at ¶¶ 49-50.)

At all relevant times, Officer Schilling was acting in his official capacity as a law enforcement officer for the Memphis Police Department and acting under color of state law. (*Id.* at ¶ 53.)  Alternatively, Officer Schilling was acting in his individual capacity.  (*Id.* at ¶ 55.)

The policies, customs, and training of the City of Memphis were allegedly the driving force behind the deprivation of constitutional rights sustained by the decedent Darrius Stewart.

4

(*Id.* at ¶ 54.)

According to Plaintiffs, the actions of Defendants violated the rights of the decedent Darrius Stewart under the Fourth and Fourteenth Amendments of the Constitution in that he was deprived of his rights to freedom from the unlawful seizure of his person, freedom from the use of unjustified and excessive force, and the freedom from deprivation of liberty without due process of law. (*Id.* at ¶ 57.) Specifically, those rights were violated when Officer Schilling shot the decedent Darrius Stewart who was unarmed and fleeing. (*Id.* at ¶ 62.)

Plaintiffs further allege that, on the relevant date, the City of Memphis had an official pattern, custom, and practice of allowing its officers to use excessive and unjustified force knowing that such practice violated the civil rights of the decedent Darrius Stewart and others. (*Id.* at ¶ 58.)

Also, on the relevant date, the City of Memphis allegedly had no policy as to how to handle individuals such as the decedent Darrius Stewart, how not to escalate a situation such as that presented in this case, did not train its officers in how to deal appropriately with such a situation, and did not properly investigate such officer shootings. (*Id.* at ¶¶ 59, 62.) The City of Memphis allegedly approved and/or ratified the conduct of its officers in violating the civil rights of others by failing to discipline those officers and allowing them to continue as officers and acted with deliberate indifference toward the decedent Darrius Stewart by allowing its officers to escalate situations such as the one presented in this case. (*Id.* at ¶¶ 60-61.) The City of Memphis and Director Armstrong have allegedly sent "the clear message to police officers that it is okay to shoot first and ask questions second if the officer thinks that there is any chance that a potential suspect or future victim may have a weapon or may pose a threat to officers," as evidenced by other police shootings in Memphis. (*Id.* at ¶ 61.) Specifically, the City of Memphis has a policy

and/or custom of its officers failing to call for back-up and receiving coded radio transmissions in the presence of citizens not yet under arrest.  (*Id.* at ¶ 72.)

The City of Memphis allegedly violated the rights of the decedent Darrius Stewart in its hiring, firing, and supervision of Officer Schilling.  (*Id.* at ¶ 77.)   The City of Memphis allegedly fails to properly investigate complaints against its officers and encourages a "Code of Silence" whereby officers are encouraged not to report misconduct by fellow officers and not to cooperate with investigations of fellow officers. (*Id.* at ¶¶ 67-68, 92-97.)

The actions of Defendants allegedly resulted in the death of Darrius Stewart whether directly or as an underlying cause of his death. (*Id.* at ¶¶ 71, 108.)

Plaintiffs also allege state law claims of wrongful death (*Id.* at ¶ 111), negligent hiring, supervision, and retention on the part of the City of Memphis, (*Id.* at ¶ 112), and negligent and/or intentional infliction of emotional distress.  (*Id.* at ¶ 113.)

Plaintiffs seek compensatory and punitive damages, as well as injunctive and declaratory relief.  (*Id.* at ¶¶ 115- 117.)

<u>Standard of Review</u>

The Federal Rules of Civil Procedure require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[1]  A complaint may be attacked for failure "to state a claim upon which relief can be granted."[2]  When considering a Rule 12(b)(6) motion to dismiss, a Court will presume that all the factual allegations in the

---

[1] Fed. R. Civ. P. 8(a)(2).

[2] Fed. R. Civ. P. 12(b)(6).

complaint are true and will draw all reasonable inferences in favor of the nonmoving party.[3] "The court need not, however, accept unwarranted factual inferences."[4]

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[5] Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[6] That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face."[7] A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] If the Court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'"[9] "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."[10]

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a

---

[3] *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).

[4] *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

[6] *Id.* (citations omitted).

[7] *Id.* at 570.

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[9] *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

[10] *Id.*

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[11]  The language of Rule 12(f) is permissive and not mandatory.  The Sixth Circuit has stated that Rule 12(f) motions to strike "are viewed with disfavor and are not frequently granted."[12]  A motion to strike serves the purpose "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with" them early in the case.[13]  As such, a court should grant a motion to strike "if it appears to a certainty that [the moving party] would succeed despite any state of the facts which could be proved in support of the [claim for relief or] defense and are inferable from the pleadings."[14]

Defendant City has filed its motion under either Rule 12(b)(6) or Rule 12(f).  When a defendant alleges that the plaintiff is not entitled to the relief sought, it is analyzed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), even if the motion is denoted a "motion to strike."[15]  Accordingly, the Court has considered Defendant's motion under Rule 12(b)(6).

### Pension Board

Defendants contend that the complaint fails to state a claim against the Pension Board of the City of Memphis.  In their response, Plaintiffs have clarified that "[t]he statements regarding the actions of the City's Case Pension Board and the ratification of such actions of the City are fact allegations describing the policy of the City with regard to the actions of its officers in such

---

[11] Fed. R. Civ. P. 12(f).

[12] *Operating Eng'rs Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted).

[13] *Id.* (citing *Kennedy v. City of Cleveland,* 797 F.2d 297, 305 (6th Cir. 1986)).

[14] *Id.* (citing *Williams v. Jader Fuel Co.,* 944 F.2d 1388, 1400 (7th Cir. 1991)).

[15] *See Starnes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036, 1046 (W.D. Tenn. 2011).

cases of excessive force rather than a statement of a claim against the City's Pension Board."[16]

Accordingly, to the extent necessary, Defendant's motion to dismiss the claims against the Pension Board is granted.

## Section 1983 Claims

### Official Capacity Suits

Plaintiffs have sued Defendant Armstrong in his official capacity as the former director of the Memphis Police Department and Defendant Officer Schilling in his individual and official capacities as a former officer with the Memphis Police Department. Defendant City of Memphis has moved the Court to dismiss the official capacity suits against Defendant Armstrong and Defendant Schilling.

It is well-settled that an official capacity suit is nothing more than a suit against the governmental entity.[17] "There is no longer a need to bring official-capacity actions against local government officials, for ... local government units can be sued directly for damages and injunctive or declaratory relief."[18] Here, the official capacity designation is redundant because Plaintiffs have named the City of Memphis as a defendant. Therefore, the portion of the motion seeking to dismiss the official capacity claims brought against Defendants Armstrong and

---

[16] (Pls' Resp. pp. 13-14, ECF No. 19.)

[17] *See, e.g., Leach v. Shelby Cnty.*, 891 F.2d 1241, 1245–46 (6th Cir. 1989) ("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself."); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's Section 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity."))."

[18] *Kentucky v. Graham*, 473 U.S. at 167 n. 14.

Schilling is granted.[19]

<u>Claims Under the Fourteenth Amendment</u>

Defendant contends that Plaintiffs have failed to state a §1983 claim under the Fourteenth Amendment. To state a claim for the deprivation of a constitutional right under 42 U.S.C. § 1983, a plaintiff must allege (1) that the defendant acted under color of state law and (2) that the defendant's conduct deprived the plaintiff of rights secured by the Constitution.[20] Section 1983 does itself not confer substantive rights but serves as a means to vindicate rights already conferred by the Constitution or laws of the United States.[21] The Sixth Circuit has recognized that a claim concerning a police officer's use of excessive force can fall under the Fourth, the Eighth, or the Fourteenth Amendments.[22] A plaintiff's status at the time of the police conduct determines which amendment governs the claim.[23] The Fourth Amendment's guarantee against unreasonable searches and seizures applies to excessive force claims brought by free citizens;[24] the Eighth Amendment's protection from cruel and unusual punishment applies to excessive

---

[19] Plaintiffs cite *Leach v. Shelby Cnty., supra* note 17, for the proposition that a plaintiff may sue both the governmental entity and the governmental official in his official capacity. *Leach* actually held that "[b]ecause a suit under section 1983 against a defendant 'in his official capacity' is equivalent to a suit against the local government entity, provided that the entity receives notice and an opportunity to respond, the prudent course for a plaintiff who seeks to hold a local government entity liable for damages resulting from an allegedly unconstitutional action under 42 U.S.C. § 1983 would be to name in his pleadings the government entity itself." 891 F.2d at 1245.

[20] *Fritz v. Charter Tp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

[21] *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)).

[22] *Burgess*, 735 F.3d at 472.

[23] *Lanman v. Hinson*, 529 F.3d 673, 680–81 (6th Cir. 2008).

[24] *Burgess*, 735 F.3d at 472 (citing *Graham v. Connor*, 490 U.S. at 388).

force claims alleged by convicted persons;[25] and the Fourteenth Amendment's Due Process Clause applies to excessive force claims "[w]hen a citizen does not fall clearly within either category—e.g., pretrial detainees."[26]

Applying these principles to the allegations in this case, the Court finds that Plaintiffs have failed to plead a § 1983 claim for the violation of Stewart's Fourteenth Amendment rights. The complaint alleges that Defendants violated Stewart's rights in the course of an investigative stop and subsequent arrest. It is well-settled that the "Fourth Amendment prohibits the use of excessive force by arresting and investigating officers"[27] and that an "excessive force claim [which] arises in the context of an . . . arrest or investigative stop of a free citizen" is a "seizure" invoking the Fourth Amendment.[28] In light of this authority, the Court holds that the Fourth Amendment applies to Plaintiffs' excessive force claims against Defendants during the stop and arrest of the decedent.

The Sixth Circuit has been clear that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process under the Fourteenth Amendment."[29] As such, the complaint fails to state a § 1983 claim for the violation of Stewart's Fourteenth Amendment rights and must be analyzed under

---

[25] *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 318–22 (1986)).

[26] *Id.*

[27] *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 637 (6th Cir. 2013) (citing *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006).

[28] *Graham v. Connor*, 490 U.S. at 94.

[29] *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 133 (6th Cir. 2014).

the Fourth Amendment.[30]  Therefore, Defendant's motion to dismiss the Fourteenth Amendment claim is granted.

<u>Claims Against the City of Memphis</u>

Defendant City of Memphis also asks the Court to dismiss Plaintiffs' remaining § 1983 claims against it.  Defendant contends that the complaint contains no "plausible allegations of acts or omissions attributable to the City of Memphis constituting a violation of Stewart's constitutional rights, and therefore, fails to state a claim under 42 U.S.C. §1983."[31]  To the contrary, the complaint is replete with allegations against the City.

Plaintiffs have alleged, *inter alia*, as follows:

● The City of Memphis has a history of its police officers shooting unarmed black men who are attempting to flee its police officers.[32]

● The policies, customs, and training of the City of Memphis were the driving force behind the deprivation of constitutional rights sustained by the decedent Darrius Stewart.[33]

● On the relevant date, the City of Memphis had an official pattern, custom, and practice of allowing its officers to use excessive and unjustified force knowing that such practice violated the civil rights of the decedent Darrius Stewart and others.  Also, on the relevant date, the City of Memphis had no policy or custom as to how to handle individuals such as the decedent Darrius Stewart, how not to escalate a situation such as that presented in this case, did not train its

---

[30]  Likewise, claims of failure to train, supervise and discipline are considered under the Fourth Amendment.  *See Underwood v. City of Memphis*, 2006 WL 1879737 at *4 (W.D. Tenn. July 6, 2006) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).

[31]  (Def's Memo. p. 3, ECF No. 12-1.)

[32]  (Cmplt. ¶¶ 49-50, ECF No. 1.)

[33]  (*Id.* at ¶ 54.)

officers in how to deal appropriately with such a situation, and did not properly investigate such officer shootings.[34]

● The City of Memphis approved and/or ratified the conduct of its officers in violating the civil rights of others by failing to discipline those officers and allowing them to continue as officers and acted with deliberate indifference toward the decedent Darrius Stewart by allowing its officers to escalate situations such as the one presented in this case. The City of Memphis and Director Armstrong have sent "the clear message to police officers that it is okay to shoot first and ask questions second if the officer thinks that there is any chance that a potential suspect or future victim may have a weapon or may pose a threat to officers," as evidenced by other police shootings in Memphis. Specifically, the City of Memphis has a policy and/or custom of its officers failing to call for back-up and receiving coded radio transmissions in the presence of citizens not yet under arrest.[35]

●The City of Memphis violated the rights of the decedent Darrius Stewart in its hiring, firing, and supervision of Officer Schilling.[36]

●The City of Memphis fails to properly investigate complaints against its officers and encourages a "Code of Silence" whereby officers are encouraged not to report misconduct by fellow officers and not to cooperate with investigations of fellow officers.[37]

● The actions of Defendants resulted in the death of Darrius Stewart whether directly or

---

[34] (*Id.* at ¶¶ 58-59, 62.)

[35] (*Id.* at ¶¶ 60-61, 72.)

[36] (*Id.* at ¶ 77.)

[37] (*Id.* at ¶¶ 67-68, 92-97.)

as an underlying cause of his death.[38]

Generally, local governments such as Defendant City are not considered to be "persons" under § 1983 and, thus, are not subject to suit.[39] However, when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [complained of] injury [,]" municipalities and other local governments are considered a "person" for purposes of § 1983.[40] Section 1983 liability does not attach to a municipality based on the actions of its employee tortfeasors under the doctrine of respondeat superior; instead, such liability may only be imposed on the basis of the municipality's own custom or policy.[41] "Under § 1983, local governments are responsible only for their own illegal acts" and may not be held vicariously liable for the actions of their employees.[42]

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that an action pursuant to an official policy or custom caused their injury.[43] Official municipal policy includes the decisions of a government's lawmakers or the acts of its policymaking officials.[44] That is, a municipality's "policies" are "decisions of its duly constituted legislative

---

[38] (*Id.* at ¶¶ 71, 108.)

[39] *Monell v. N.Y.C. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978).

[40] *Id.* at 694; *see also Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*).

[41] *Monell*, 436 U.S. at 691.

[42] *D' Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

[43] *Monell*, 436 U.S. at 691.

[44] *See Pembaur v. Cincinnati*, 475 U.S. 469, 480 – 481 (1986).

body or those officials whose acts may fairly be said to be those of the municipality."[45] Alternatively, a "custom" is a practice that, while not formally approved, "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[46]

Absent proof it resulted from an unconstitutional policy, a city is not liable for a single incident resulting in a constitutional violation.[47] Furthermore, a city is not liable unless there is an "affirmative link between the policy and the particular constitutional violation alleged" or "causal connection."[48] Thus, to establish liability on claims asserted against a municipality under § 1983, Plaintiffs "must adequately plead (1) that a violation of a federal right took place; (2) that the defendant acted under color of state law; and (3) that a municipality's policy or custom caused that violation to happen."[49]

In the present case, contrary to Defendant City's arguments, Plaintiffs have sufficiently alleged facts which, if proved, show that the City is responsible for constitutional violations that injured Plaintiffs through its policies, customs, or practices. For example, Plaintiffs have specifically alleged that Defendant City did not train its officers as to how to handle individuals such as the decedent Darrius Stewart, how not to escalate a situation such as that presented in this case, and how to deal appropriately with such a situation, and did not properly investigate

---

[45] *Bryan Cnty.*, 520 U.S. at 403-04.

[46] *Id.* at 404.

[47] *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985).

[48] *Id.*

[49] *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)).

such officer shootings.[50]   Additionally, Plaintiffs allege that Defendant City has a policy and/or custom of its officers failing to call for back-up and receiving coded radio transmissions in the presence of citizens not yet under arrest.[51]   Plaintiffs have also alleged a causal link between the alleged constitutional deprivation and Stewart's death.[52]

Accordingly, the Court finds that Plaintiffs have met their pleading burden for the § 1983 claims against the City of Memphis other than the official capacity claim and the Fourteenth Amendment claim.[53]

### State Law Claims

In addition to the civil rights claims under §1983, Plaintiffs also allege claims under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §29-20-101 *et seq.*, the Tennessee Constitution, and the common law of Tennessee.  In Tennessee, the TGTLA is the exclusive remedy for claims against a governmental entity such as the City.[54]   Under the TGTLA, the City "is generally subject to suit for civil claims sounding in negligence with certain

---

[50]   (Cmplt, ¶¶ 58-59, 62, ECF No. 1.)

[51]   (*Id.* at ¶¶ 60-61, 72.)

[52]   (*Id.* at ¶¶ 71, 108.)

[53]   Defendant City also asserts that Plaintiffs have contradictorily pled both that the City's failed to have certain policies and procedures in place to protect the rights of the decedent and that the actions of Officer Schilling violated the policies and procedures of the City. (Def's Reply pp. 3-4, ECF No. 20.)  Under Fed. R. Civ. P.  8, "a pleading does not become insufficient by reason of a party having made alternative, or even contradictory, claims." *Detroit Tigers, Inc. v. Ignite Sports Media, L.L.C.*, 203 F. Supp. 2d 789, 793 (E.D. Mich. 2002) (citing *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 92 (6th Cir. 1982)).

[54]   *See Austin v. Shelby County*, 640 S.W.2d 282 (1982).  *See also Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001) (discussing that the TGTLA governs claims against counties, municipalities, and other local governmental agencies).

enumerated exceptions."[55]    Thus, while the TGTLA removes immunity for an "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," it also provides a list of exceptions which prevents the municipality from being sued.[56]  "[I]njuries that 'arise[ ] out of ... civil rights' are one such exception, that is, sovereign immunity continues to apply in those circumstances."[57] The TGTLA's "civil rights" exception includes claims arising under § 1983,[58] and a plaintiff cannot seek to circumvent the City's immunity by couching its civil rights claim as one of negligence.[59]

In *Johnson v. City of Memphis*, the Sixth Circuit Court of Appeals determined that a widow could not add a state law negligence claim to her § 1983 suit alleging Fourth Amendment violations by police officers because the negligence claim "[arose] out of the same circumstances giving rise to her civil rights claim." [60]

> The district court found that '[a]ll of Plaintiffs' claims against the City as an employer are in essence claims for violation of Johnson's constitutional rights.' The district court found that the claim fell under the "civil rights" exception, and that the City is therefore immune under the GTLA. This is consistent with the

---

[55]  *Campbell v. Anderson Cnty.*, 695 F. Supp.  2d 764, 777 (E.D. Tenn. 2010) (citations omitted).

[56]  *See Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) (citing Tenn. Code Ann. § 29–20–205).

[57]  *Id.*

[58]  *Id.*

[59]  *See Hale v. Randolph*, 2004 WL 1854179 (E.D. Tenn. 2004) ("Because Hale asserts his false imprisonment, assault and battery, and negligence per se claims against the City in the context of a civil rights case, his alleged injuries arise out of 'civil rights' and the City is entitled to immunity from suit on these claims pursuant to the "civil rights" exception in Tenn. Code Ann. § 29–20–205(2).")  *See also Brooks v. Sevier County*, 279 F. Supp. 2d 954, 960 (E.D. Tenn. 2003) (explaining that governmental entities retain immunity when a claim rooted in the conduct of employees is "in essence a claim for negligent violation of civil rights.")

[60]  *Johnson*, 617 F.3d at 872.

results reached by the majority of district courts addressing this issue. . .

Plaintiffs' claim regarding the dispatcher's negligence arises out of the same circumstances giving rise to her civil rights claim under § 1983. It therefore falls within the exception listed in § 29-20-205, and the City retains its immunity . . .

Because the plain language of the GTLA preserves immunity for suits claiming negligent injuries arising from civil rights violations, we find that the district court did not err in denying Plaintiffs' motion to amend and reinstate her state law claim.[61]

Here, as in *Johnson*, Plaintiffs' state law claims against Defendant City arise out of the same circumstances giving rise to their § 1983 civil rights claims. Therefore, those claims are barred by TGTLA's retention of immunity for injuries arising from civil rights. Additionally, the City has immunity from suit on Plaintiffs' state law claims that the City failed to fully investigate this incident and failed to adequately supervise, train and screen its officers under the civil rights exception to the TGTLA.[62]

The complaint makes reference to violation of rights guaranteed under the Tennessee Constitution. Without specifics as to the various provisions of the Tennessee Constitution and their application to this case, references to the Tennessee Constitution are too vague to state a cause of action.  Additionally, Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution;[63] thus, any claims brought under the Tennessee Constitution must be dismissed.

---

[61]  *Id.* at 872.

[62]  See this Court's decision in *Noyes v. City of Memphis*, 2012 WL 3060100 at *3 (W.D. Tenn. July 25, 2012) ("The Court holds that the City is entitled to immunity from suit on Plaintiff's claims of failure to train, supervise or discipline pursuant to the 'civil rights' exception in Tenn.Code Ann. § 29–20–205(2).")

[63]  *See Bowden Building Corp. v. Tennessee Real Estate Commission*, 15 S.W.3d 434, 446 (Tenn. App. 1999); *Cline v Rogers*, 87 F.3d 176, 178 (6th Cir. 1996) (citing *Lee v. Ladd*, 834 S.W.2d 323, 325 (Tenn. App. 1992)).

Alternatively, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.[64] Section 1367(c) of Title 28 provides that "district courts may decline to exercise supplemental jurisdiction over a claim .... if—... (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." The Sixth Circuit has determined that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction."[65] Accordingly, the Court declines to accept supplemental jurisdiction over Plaintiffs' state law claims pursuant to the "exceptional circumstance" of the TGTLA's exclusive jurisdiction provision.[66]

Damages

As well as compensatory damages, Plaintiffs seek punitive damages and injunctive and declaratory relief. Defendant City asserts that Plaintiffs have failed to state a claim for punitive damages and injunctive and declaratory relief. Plaintiffs have not addressed this portion of the motion to dismiss in their response. Consequently, they have waived any argument against the

---

[64] *See Spurlock v. Whitley*, 971 F. Supp. 1166, 1185 (M.D. Tenn. 1997) ((holding that "the exclusivity provision of the TGTLA provides a compelling reason for this Court to decline supplemental jurisdiction of the TGTLA claim").

[65] *Gregory v. Shelby Cnty*, 220 F.3d 433, 446 (6th Cir. 2000) *overruled on other grounds in Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). *See also Beddingfield v. City of Pulaski*, 666 F. Supp. 1064, 1064–66 (M.D. Tenn.), *rev'd on other grounds*, 861 F.2d 968 (6th Cir. 1988) (declining to exercise jurisdiction over pendent state law claims of wrongful death and violation of the Tennessee Constitution "in the face of the limitations upon suability specified in Tenn. Code Ann. § 29–20–307.").

[66] The civil rights claims for which the City has not waived immunity and any claims under the Tennessee Constitution which the Court has found not to be cognizable are dismissed with prejudice. Any other state law claims are dismissed without prejudice. *See Smith v. Shelby Cnty.,* 721 F. Supp. 2d 712, 722 (W.D. Tenn. 2010) ('Because the Court declines to accept jurisdiction over these state claims, they are dismissed without prejudice.").

dismissal of these claims.[67]

However, even if Plaintiffs had objected to the dismissal of their punitive damages claim, it is well-settled that punitive damages cannot be recovered against a municipality under § 1983.[68] Likewise, Tennessee courts have held that state law prohibits punitive damage awards against state government agencies for the acts of government employees,[69] and Plaintiffs' claim for punitive damages must be dismissed.

Defendant City also seeks the dismissal of Plaintiffs' claim for injunctive or declaratory relief. Defendant contends that "Plaintiffs have not alleged any factual or legal basis to support a claim for injunctive or declaratory relief nor have Plaintiffs articulated why declaratory or injunctive relief is appropriate in this case."[70]

While the pleading standard for a complaint "is decidedly liberal, it requires more than the bare assertion of legal conclusions."[71] A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a

---

[67] *See Hess v. Huber Heights,* 2014 WL 3341346 at *5 ("[When] as here, plaintiff has not raised arguments in the District Court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.") (S.D. Ohio July 8, 2014) (citing *Humphrey v. United States AG Office,* 279 Fed. App'x 328, 331 (6th Cir. 2008) *(*citing *Resnick v. Patton,* 258 Fed. App'x 789, 793, n. 1 (6th Cir. 2007) (finding that arguments are waived in the absence of opposition to a motion to dismiss in the district court) (citations omitted))).

[68] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

[69] *See Johnson v. Smith*, 621 S.W.2d 570, 572 (Tenn. 1981) (citing *Tipton County Bd. of Educ. v. Dennis*, 561 S.W.2d 148 (Tenn. 1978)).

[70] (Def's Memo. p. 16, ECF No. 12-1.)

[71] *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999).

right to relief above the speculative level."[72] Plaintiffs have not made such a showing, and their claim for injunctive or declaratory relief is dismissed.

Conclusion

In summary, the portions of the motion to dismiss the following claims are **GRANTE**D: Plaintiffs' claims against the Pension Board (to the extent that any such claims were made); the official capacity claims against Defendants Armstrong and Schilling; claims brought under the Fourteenth Amendment to the United States Constitution; claims brought under Tennessee state law; and the claims for punitive damages and injunctive and declaratory relief. The motion to dismiss is **DENIED** in all other respects.

IT IS SO ORDERED.

**s/  S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  February 15, 2017.

---

[72] *Twombly*, 550 U.S. at 555.